## AVERY v. MAYOR AND CITY COUNCIL OF BALTIMORE.

(District Court, D. Maryland. November 13, 1911.)

MUNICIPAL CORPORATIONS (§ 849*)—LIABILITY FOR TORTS—MAINTENANCE OF HARBOR BUOY.

    A city which, in the exercise of its governmental functions, has placed and maintains a buoy in a harbor to mark the lines of an anchorage ground can be held liable for an injury to a vessel caused by such buoy only on the ground of negligence, and, where it is shown that the buoy was properly placed and secured, that it was visited by city employés nearly every day, and remained in apparently good condition, it is not sufficient to establish negligence that it in some unknown way became submerged, and a vessel ran upon it and was injured.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1806; Dec. Dig. § 849.*]

In Admiralty. Suit by Salem W. Avery against the Mayor and City Council of Baltimore. Decree for respondent.

Harry N. Abercrombie, for libelant.
Alexander H. Preston, for respondent.

ROSE, District Judge. The libelant was master and owner of a pungy. It was called the "Sarah J. Elizabeth." It will be spoken of as the "pungy." On March 12, 1906, it struck something in the harbor of Baltimore. Its hull was pierced below the water line. It sank almost immediately. It was a total loss. The libelant says that it came into collision with a submerged buoy. The buoy had been placed in position by the respondent. The latter will be referred to as the "city." The buoy marked one of the limits of an anchorage ground. The libelant says that the city is liable to make good his loss. The city replies: First. That the buoy did not cause the injury. Second. That the buoy was always in sight. If the pungy struck it, the fault was the pungy's. Third. If the buoy caused the injury, and if the pungy was not to blame, nevertheless the city is not liable.

---

The pungy had delivered a cargo of oysters on a wharf on the northern or eastern side of the channel. It had gotten under way about 10 minutes before the accident. It was broad daylight. A stiff breeze was blowing from the northward. The pungy's course was a little east of south. Two men were on board. One was on the lookout. He knew the buoy was in the neighborhood. He says he was looking for it. He did not see it. The pungy struck something. Those on board at the time did not know what it was. It held the pungy fast. The wind then swung the pungy around. It freed itself. As it did the end of the buoy emerged from the water. It rose to a height variously estimated from 18 inches to five feet. The pungy hailed a tug. It was taken in tow. It sank before it could be brought to shore.

The accident is hard to understand. I think the pungy was sunk by the buoy. Some of the city's witnesses saw the buoy shortly afterwards. They say it had fresh marks upon it, as if it had been recently struck, and struck hard. I do not think that the pungy was in fault for not seeing the buoy, because I do not think that the buoy was above water. If it had been, it could scarcely have done the damage it did. The pungy was sailing very nearly with the wind. The latter, as has been stated, was blowing freshly from the north. There was little tidal movement. If the buoy had been above water, it would have pointed away from the pungy. If the latter had run over it, no great harm would have been done.

It seems probable that, before the collision, the buoy had in some way been forced under the water, and held there. The blow struck by the pungy and its subsequent swinging around while fast to the buoy might have released the latter from whatever was holding it under the water.

The question remains, Was the city to blame? The buoy had been placed years before. It remained where it was for more than two years afterwards. There is some evidence that at times the buoy did not project very far above the water. There is none that it was ever completely submerged except when the pungy ran upon it. Its upper end had been broken off some time before. How much its normal height above water was thereby reduced does not appear. It was visited almost daily by the city's employés. They never saw anything to suggest that it was in any wise a danger to navigation.

The libelant argues that had the buoy not been broken the accident might not have happened. He says that in that case it might not have been totally submerged at the time of the collision. He contends that the broken, and more or less sharpened and jagged, end was well fitted to pierce a ship's planking. Neither of these contentions is without some plausibility. The proof in my opinion, however, falls short of showing that the accident would not have happened had the buoy been unbroken.

The libelant has not shown how the buoy came to be submerged. It appears to have been fastened to its anchor by a shackle. He claims that, if it had been secured by a chain, it could not have been submerged. He has offered no testimony to show that the method

used by the city was not proper and safe. The city has affirmatively proved that it was. Upon the record as made up, it appears that the buoy was properly placed and secured in the first instance. The city's employés regularly visited it. They never saw anything which suggested that it had in any wise become a danger to the shipping frequenting that part of the harbor. The buoy was placed by the city in the discharge of one of its governmental functions.

It is in this case unnecessary to inquire whether the city would be liable had the accident resulted from the buoy having been negligently or unskillfully planted or secured, or, as the result of the buoy once well placed and secured, becoming in some way a danger and having been allowed to remain a danger after the city's servants knew that it had become so, or might by the exercise of reasonable diligence have known it.

In this case the libelant has failed to sustain the burden resting on him to show that the city was negligent.

The libel was filed a few months after the accident. It was not brought to a hearing until more than five years and a half after the pungy sank. The long delay doubtless did not lessen the difficulty the libelant had in proving his case.

The libel must be dismissed, with costs.